IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Northern Division**

✓ ___ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

9:24 am, Mar 03 2021

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE MATTER OF THE SEARCH OF:

INFORMATION ASSOCIATED WITH
ACCOUNT **@BonaFried** AT PREMISES
CONTROLLED BY **TWITTER, INC.**

CASE NO:  1:21-mj-394 TMD

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, William Seested, being first duly sworn, hereby depose and state as follows:

1.      I make this Affidavit in support of an application for a search warrant for information associated with the account **@BonaFried ("SUBJECT ACCOUNT")**, stored at premises controlled by Twitter, Inc. located at 1355 Market Street, Suite 900, San Francisco, California 94103 ("Twitter").

2.      The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an application for a search warrant under 18 United States Code (U.S.C.) §§ 2703(a), (b)(1)(A) and (c)(1)(A) requiring Twitter to disclose to the Government copies of the information (including the content of communications) further described in Attachment B.

### INTRODUCTION AND AGENT BACKGROUND

3.      I am a Special Agent with the Treasury Inspector General for Tax Administration ("TIGTA") and have been since September 2014.  I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center as well as the TIGTA Special

1

Agent Basic Training Academy. I am currently assigned to the Mid-Atlantic Field Division – New Carrollton, Maryland Office. I have received instruction and training, and have experience investigating threats and assaults towards the United States federal government and its employees. In the course of conducting or participating in criminal investigations, I have been involved in gathering and analyzing information, interviewing and debriefing witnesses and informants, conducting physical surveillance, and collecting and analyzing evidence.

4.       I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other law enforcement officers relating to this investigation. The information set forth in this Affidavit is based on my own observations and review of documents, or reliable information provided to me by other law enforcement personnel. I am setting forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested search and seizure warrant. Unless otherwise indicated, all written and oral statements referred to herein are set forth in substance and in part, rather than verbatim.

5.       Based on my training and experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that violations of 18 U.S.C. § 844(e) have been committed by **CODY WOLF GIDEON MOHR** ("**MOHR**") in the District of Maryland and elsewhere. There is also probable cause to search the information described in Attachment A for evidence and fruits of these crimes, as further described in Attachment B.

## JURISDICTION

6.       This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.       Twitter is a social-networking company headquartered in San Francisco, California. Twitter owns and operates a free-access website of the same name and allows its users to create and read messages called "tweets."  Twitter is an instrument of interstate commerce as that term is used in 18 U.S.C. § 844(e).

8.       On or around January 19, 2021, the TIGTA Criminal Intelligence and Counterterrorism Division (CICD) conducted a routine review of publicly accessible social media accounts in order to identify and prevent potential threats to the Internal Revenue Service (IRS) and its employees.  The review resulted in the identification of tweets on a Twitter page bearing the username "Game 6 Osama" and moniker "**@BonaFried**" (**SUBJECT ACCOUNT**) in which the user threatened the IRS and federal employees, including political officials and law enforcement officers.

9.       Among the tweets was a message dated on or around January 15, 2021 stating, "I am going to explode the irs headquarters with a bomb."  Another Twitter user identified as "**@Captpraxis**" responded to this tweet on or around the same date stating, "Ok now you're just trying to get suspended to fit in."  The user of the **SUBJECT ACCOUNT** responded to "**@Captpraxis**" on or around the same date stating, "I am simply announcing my intentions to give employees a fair shot at escaping alive."  Additional tweets from the **SUBJECT ACCOUNT** on or around the same date included the following: "I'm about to drop something else. On the irs headquarters;" "Im gonna do it;" and "It's probably just a matter of if you happen to get reported or not (please don't report me)."  On the following day, January 16, 2021, a tweet posted on the **SUBJECT ACCOUNT** stated: "something's gonna blow up."

10.     The user of the **SUBJECT ACCOUNT** posted other tweets since on or around January 15, 2021, stating he was "laser focused on thinking about ways to kill [Speaker of the House] Nancy Pelosi."  The user of the **SUBJECT ACCOUNT** further tweeted about ways to obtain firearms, how easy it was to build a semi-automatic rifle, and about sending a picture to another Twitter user in which the user placed a firearm in his mouth.  The user of the **SUBJECT ACCOUNT** also stated it "[would be cool to] drive 80 mph into a million people," and that, "…if a cop pulls you over for something minor like speeding or a busted tail light, you can just threaten his life and he'll let you go with no trouble."  Several of the tweets from the **SUBJECT ACCOUNT** included a note stating, "Twitter for Android," indicating the user likely posted them from a cellular telephone utilizing an Android-based operating system. Also included on the top of the **SUBJECT ACCOUNT's** page was the following: "I'm Cody I'm from Maryland."

11.     The tweets listed above are intended to provide a sampling of those posted by the user to the **SUBJECT ACCOUNT** rather than a comprehensive review, because Twitter suspended the **SUBJECT ACCOUNT** before your Affiant could conduct an in-depth analysis.

## INFORMATION RECEIVED FROM TWITTER

12.     TIGTA CICD requested an emergency disclosure of the subscriber information for the **SUBJECT ACCOUNT** from Twitter on or around January 19, 2021, which identified the user of the account as **MOHR**.  An emergency petition was made because the IRS Headquarters is located in Zone 9 of the National Security Special Event Area for the upcoming 2021 Presidential Inauguration scheduled for the following day.

13.     In addition to his name, the information returned from Twitter stated **MOHR** registered for the **SUBJECT ACCOUNT** on or around December 25, 2010.  While registering for

the account, **MOHR** listed his email address as cody.mohr@gmail.com, and his telephone number

as 1-443-422-4466. A registration Internet Protocol (IP) address was listed as 166.203.58.149.

14.     Twitter additionally provided a listing of IP addresses used during recent logins to the

**SUBJECT ACCOUNT** between the dates of on or around January 17, 2021 and January 19, 2021.

On or around January 19, 2021, your Affiant utilized an IP address search engine that revealed the

majority of the **SUBJECT ACCOUNT** logins occurred in the area in or around Columbia,

Maryland, using an Internet Service Provider (ISP) identified as Verizon, Inc. Your Affiant further

noted an account login on or around January 18, 2021, which occurred in the area of Arlington,

Virginia using a mobile ISP identified as T-Mobile, Inc. This information suggests **MOHR** may

have logged into the **SUBJECT ACCOUNT** using a cellular telephone serviced by T-Mobile, Inc.

## ADDITIONAL INVESTIGATIVE INQUIRIES

15.     Based on the information received from Twitter, your Affiant conducted additional

investigative queries on or around January 19, 2021, that revealed **MOHR** owns a 2014 Mazda3,

bearing Maryland license plate 6CZ1566. On or around the same date, your Affiant attempted to

locate **MOHR's** vehicle in or around the Columbia, Maryland area. The vehicle was located at

approximately 9:30 pm parked in front of 5490 Mystic Court, Columbia, Maryland 21044, which is

believed to be the residence of an immediate family member.

16.     Your Affiant obtained a driver's license photograph of **MOHR** from the National

Law Enforcement Telecommunications System (NLETS) on or around January 19, 2021. That

photograph appeared to closely match a photograph of a Caucasian male in his late twenties posted

to the **SUBJECT ACCOUNT** on or around January 11, 2021.

## ARREST WARRANT

17.     On or around January 20, 2021, your Affiant located and arrested **MOHR** at 5490 Mystic Court, Columbia, Maryland 21044 pursuant to a warrant issued on or around the same date in the District of Maryland.  **MOHR** was read his Miranda rights, noted he understood them and confirmed he was the owner of the **SUBJECT ACCOUNT**, before requesting to consult with an attorney prior to any further questioning.

18.     Prior to leaving the scene, an individual approached and identified herself as one of **MOHR's** immediate family members.  Your Affiant asked if the family member knew whether **MOHR** had a Twitter account. The family member responded in the affirmative. The family member further advised the family member did not believe anyone other than **MOHR** had access to the account.

19.     At the time of his arrest, **MOHR** had a black OnePlus cellular telephone in his possession.  OnePlus cellular telephones utilize an Android-based operating system.  Your Affiant seized the telephone, placed it in airplane mode and catalogued it as evidence.  Upon calling the number 1-443-422-4466, which was previously provided by Twitter, your Affiant immediately heard a voicemail message stating, "please leave your message for: **CODY MOHR**."  On or around January 24, 2021, your Affiant confirmed **MOHR's** cellular telephone, using telephone number 1-443-422-4466, was serviced by T-Mobile, Inc.

20.     Based upon my training and experience, your Affiant submits that there is probable cause to believe that the **SUBJECT ACCOUNT** was used in furtherance of violations of 18 U.S.C. § 844(e), is controlled by **MOHR**, and will contain additional evidence of the same.

**BACKGROUND CONCERNING TWITTER**

21.     In my training and experience, I have learned that Twitter owns and operates a free-access social-networking website of the same name that can be accessed at

http://www.twitter.com.  Twitter allows its users to create their own profile pages, which can include a short biography, a photograph of themselves and location information.  Twitter also permits users to create and read 140-character messages called tweets, and to restrict their tweets to individuals whom they approve.  These features are described in more detail below.

22.     Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account.  The Twitter user may also change this username, password and name without having to open a new Twitter account.

23.     Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter.  This information may include the user's full name, email addresses, physical address (including city, state and zip code), date of birth, gender, hometown, occupation and other personal identifiers.  For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created and the IP address at the time of sign-up.  Twitter keeps IP logs for each user.  These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.  This type of information can help to identify which computers or other devices were used to access a given Twitter account.

24.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page.  In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

25.     As discussed above, Twitter users can use their accounts to post tweets of 140 characters or fewer.  Each tweet includes a timestamp that displays when the tweet was posted to Twitter.  Twitter users can also "favorite," "retweet" or reply to the tweets of other users.  In addition, when a tweet includes a Twitter username, often preceded by "@," Twitter designates that tweet a "mention" of the identified user.  In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own tweets, as well as a list of all tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

26.     Twitter users can include photographs or images in their tweets.  Each Twitter account also has a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.  Twitter users can also opt to include location data in their tweets, which will reveal the users' locations at the time they post each tweet.  This "Tweet with Location" function is off by default, so Twitter users must opt in to the service.  In addition, Twitter users may delete their past location data.  Additionally, when Twitter users want to post a tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co.  This link service measures how many times a link has been clicked.

27.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' tweets and site updates.  Each user profile page includes a list of the people who are following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list).  Twitter users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting).  A Twitter user can also

group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and whom those people follow.

28. In addition to posting tweets, a Twitter user can send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users.

29. Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone. Twitter also includes a search function that enables its users to search all public tweets for keywords, usernames or subjects, among other things. A Twitter user may save up to 25 past searches. Twitter users can also connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles. If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

30. Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

31.     Thus, the computers of Twitter are likely to contain all the material described above. Information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation.  A Twitter user's account information, IP log, stored electronic communications and other data retained by Twitter can indicate who has used or controlled the Twitter account and how and when it was accessed or used. Additionally, by reviewing Twitter's IP logs for a particular account, investigators can determine the physical location associated with the logged IP addresses, and thereby learn the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Twitter access, use and events relating to the crime under investigation.  Additionally, Twitter builds geo-location into some of its services.  If enabled by the user, physical location information is added automatically to "tweeted" communications.  This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner.  Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation.  For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a criminal plan) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

## CONCLUSION

32.     Based on my training and experience, and the facts set forth in this affidavit, I submit that there is probable cause to believe the **SUBJECT ACCOUNT** contains evidence, fruits and instrumentalities relating to the above violations of 18 U.S.C. § 844(e).

33.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Twitter, who will then compile the requested records at a time

convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*William Seested*
William Seested, Special Agent
Treasury Inspector General for Tax
Administration (TIGTA)

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on February 16, 2021.

The Honorable Thomas M. DiGirolamo
United States Magistrate Judge

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the Twitter account **@BonaFried** ("**SUBJECT**

**ACCOUNT**") stored at premises owned, maintained, controlled, or operated by Twitter, Inc., 1355

Market St, Suite 900, San Francisco, California 94103.

**ATTACHMENT B**
**Particular Things to be Seized**

I.       **Information to be disclosed by Twitter, Inc. ("Twitter")**

To the extent that the information described in Attachment A is within the possession, custody or control of Twitter, including any messages, records, files, logs or information that have been deleted but are still available to Twitter, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the government for the **SUBJECT ACCOUNT** for the period from July 1, 2019 to present:

a)       The contents of all of the **SUBJECT ACCOUNT**'s public and private tweets, retweets, direct messages, profile photos, header photos, background images, locations, URLs, "bios," stored files (including videos, images and other files);

b)       All transactional information of all activity associated with the **SUBJECT ACCOUNT**, including usage information, log information, device information, information collected by cookies and other tracking technologies, third party cookies, page visits, communications with the Twitter support team, site registrations, log files, dates, times, methods of connecting, devices or software used, ports, dial ups, and/or locations;

c)       All records related to the devices, operating system, browser and cookies of the **SUBJECT ACCOUNT**;

d)       All records or other information stored by or associated with the user of the **SUBJECT ACCOUNT**, including lists of users who follow the subject user, users followed by the subject user, retweets, likes and notes;

e)       All records or other information regarding the identification of the **SUBJECT ACCOUNT**, to include application, full name, picture, email address, payment details, physical

address, telephone numbers and other identifiers, records of session times and durations, the date on which the **SUBJECT ACCOUNT** was created, the length of service, the types of services utilized, the IP address used to register the **SUBJECT ACCOUNT**, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all other user names associated with the **SUBJECT ACCOUNT**, all account names associated with the subscriber, and methods of connecting;

f)      All search history or web history;

g)      All records indicating the services available to subscribers of the **SUBJECT ACCOUNT**;

h)      All usernames associated with or sharing a login IP address or browser cookie with the **SUBJECT ACCOUNT**;

i)      All cookies, including third-party cookies, associated with the **SUBJECT ACCOUNT**;

j)      All records that are associated with the machine cookies associated with the **SUBJECT ACCOUNT**;

k)      All telephone or instrument numbers associated with the **SUBJECT ACCOUNT** (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

II.      **Information to be seized by the government**

Any and all records that relate in any way to the **SUBJECT ACCOUNT** described in Attachment A that is evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 844(e), specifically that relate to the following:

a)      All records or other information pertaining to threats against the government and its employees, political figures and law enforcement officers.

b)      All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

c)      Communication, information, documentation and records relating to who created, used, or communicated with the **SUBJECT ACCOUNT**, including records about their identities and whereabouts;

d)      Evidence of the times the **SUBJECT ACCOUNT** listed in Attachment A were used;

e)      All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

f)      Passwords and encryption keys, and other access information that may be necessary to access the **SUBJECT ACCOUNT**;

g)      Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the **SUBJECT ACCOUNT**;

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.  If the government identifies any seized communications that may implicate the

15

attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.  The investigative team may continue to review any information not segregated as potentially privileged.